DIANE J. HUMETEWA
United States Attorney
District of Arizona

MICHAEL T. MORRISSEY
Assistant U.S. Attorney
Arizona State Bar No. 012531
JOHN BOYLE
Assistant U.S. Attorney
Arizona State Bar No. 015640
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mike.morrissey@usdoj.gov
john.boyle@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>    v.<br><br>Daniel Mahon,<br><br>        Defendant. | CR-09-0712-PHX-DGC<br><br>**APPEAL OF RELEASE ORDER/ MOTION TO REVIEW RELEASE CONDITIONS** |

The government hereby requests this Court review the July 1, 2009, Order of release issued by Magistrate Judge P. Michael Mahoney in the Northern District of Illinois in this matter, and upon review of that Order, instead Order the defendant detained as a danger and a flight risk. Based upon the serious nature of the charges in this case, the mandatory minimum sentence, defendant's belief in violence, and the objections of the victims, the government submits there are no conditions that will adequately assure the presence of the defendant or protect the safety of the community.

This request is supported by the attached Memorandum of Points and Authorities.

Respectfully submitted this 6th day of July, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

s/ *Michael T. Morrissey*
MICHAEL T. MORRISSEY
Assistant U.S. Attorney

s/ *John Boyle*
JOHN BOYLE
Assistant U.S. Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. Procedural Background.**

On June 16, 2009, a federal grand jury returned an indictment against the defendant and his twin brother Dennis Mahon. The defendant is charged with a violation of 18 U.S.C. Sections 844(n), 844(i), Conspiracy to Damage Buildings and Property by Means of Explosives. The defendant was arrested on June 25, 2009, and after initial appearance on that date, was ordered detained pending a detention hearing. A detention hearing was conducted on July 1, 2009. Magistrate Judge P. Michael Mahoney of the Northern District of Illinois ordered the defendant released on a $50,000 cash bond. The United States immediately filed its Notice of Appeal and Request for Stay in the District Court. The Honorable David G. Campbell stayed the release order and set the matter for hearing on July 8, 2009. The matter of release is now before this Court.

**II. Law: Review of a Release Order.**

Pursuant to 18 U.S.C. § 3145(a), if a person is ordered released by a magistrate judge, a party may file with the district court a motion for revocation of the order or amendment of the conditions of release. In reviewing a magistrate's order regarding detention, the district court is to make its own "de novo" determination of facts. United States v. Koening, 912 F.2d 1190, 1191-93 (9th Cir. 1990). The district court does not review the matter for an abuse of discretion,

but rather, makes independent findings. *Id.*   In addition, "the ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193. However, de novo review does not require that a district court hold a new evidentiary hearing to evaluate credibility disputes. United States v. Raddatz, 447 U.S. 667, 676 (1980). Nor is the court required to grant further argument. Koenig, 912 F.2d at 1192.

The District Court has the power to consider all evidence that was presented to the Magistrate Judge or to conduct an independent hearing.  If an evidentiary hearing is found necessary, the Court must either listen to the recorded testimony or procure and read a transcript. United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

The Ninth Circuit has specifically described the factors, found in 18 U.S.C. § 3142(g), that the District Court is to consider at a detention hearing:

> These factors are:  (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

 United States v. Motamedi, 767 F.2d 1403, 1407 (9th Cir. 1985).

The presumption of dangerousness should be considered by this Court. "'The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).' United States v. Dominguez, 783 F.2d 702, 707 (7th Cir.1986)." United States v. Hir, 517 F.3d 1081,1086 (9th Cir. 2008).

**III. Argument.**

The United States submits for this Court's review  the Transcripts of Proceedings of July 1, 2009 (Exhibit A),  the Search Warrant Affidavit (Exhibit B), and the photographs of items in the Mahon home (Exhibit C) presented to Magistrate Judge Michael Mahoney.

1.) <u>The nature and circumstances of the offense, including whether it involves a crime of violence.</u>

3

In the present case, this factor clearly weighs in favor of detention. This is a crime that raises the presumption of detention pursuant to 18 U.S.C. Section 3142(e)(2)(A). Count One is a crime of violence, as defined in 18 U.S.C. Section 3156(a)(4). This point was not in dispute at the detention hearing. See, Transcript of Proceedings, July 1, 2009 (11:15 a.m.), Page 4, Line 3. The nature and seriousness of defendant's crime are very grave. The defendant was involved in a conspiracy to build and deliver a package-bomb to Donald Logan at the City of Scottsdale Office of Diversity and Dialogue. The bomb was delivered and exploded as intended. Donald Logan and Renita Linyard were injured and hospitalized as a result of the explosion. The defendant continued in this conspiracy with his brother until 2009. The transcript of the government's proffer and the indictment speak to the extreme danger of the defendant's actions and nature of this offense.

2.) <u>Weight of the evidence</u>

The weight of the evidence against the defendant is strong. The "weight of the evidence is the least important of the various factors." <u>Motamedi</u>, 767 F.2d at 1408. The government investigated the defendant and his brother for over four years. The investigation includes months of court-authorized wiretap interceptions of the defendant and his brother, as well as dozens of video and audio recorded undercover and confidential informant discussions. The government submits quoted material *infra* from those recordings. Additional evidence is presented within the government's proffer (Transcripts of Proceedings of July 1, 2009, Exhibit A) and the Search Warrant Affidavit (Exhibit B). The search warrant affidavit, the government's proffer and the indictment reflect a considerable array of evidence against the defendant.

3.) <u>History and character of the defendant</u>

The defendant's history and character militate against him. Although the defendant, like his brother, has never been arrested in the United States, his character and history reflect anything but a law-abiding individual. In addition, the lack of criminal history can be refuted by the defendant's dangerous conduct.

> We conclude that Abd Hir's history as a law-abiding citizen and his significant ties to the local community do not outweigh the extremely serious nature of the offenses with which he is charged, including his willingness to provide dangerous materials for use against civilians, while attempting to disguise his role in the affair, the weight of the evidence against him, and the nature and gravity of the danger that would be posed by his release.

Hir, 517 F.3d at 1091.

When officers and agents made contact with the defendant and his brother at his house on June 25, 2009, the defendants were told they were under arrest. The defendants refused to exit the house. Both defendants made several phone calls to other individuals, both asking for advice and warning others of the government action. After a 30-minute standoff, the defendants agreed to leave the house and were arrested. Inside the house on the table where the defendants were seen, agents recovered an AK-47 assault rifle with a loaded 30-round clip. The government submits this is the action of individuals who were one decision away from armed resistance against officers lawfully executing a search warrant.

The defendant's self-description is not of a law-abiding individual. As written in paragraph eight of the Affidavit for Search Warrant of June 23, 2009, the confidential informant asked Daniel if he and his brother did more than talk about taking action on behalf of the white race. Daniel Mahon said, "We do more than just talk about it, if I knew you better and the statute of limitations was up.... Dennis did not do much of that stuff. We thought we were doing the right thing. We were just trying to send a message.... When I would take someone's car out, it wasn't anger. It was a sense of duty. It is like a military operation. You plan for it, equip for it."

On April 2, 2008 (Call 1214), Dennis and Daniel Mahon discussed their anger toward Hispanics living in their community.

> Daniel: And uh, anyway, he uh, said that uh, there's a small company that's laying off all the white guys here and hiring Mexicans.
> Dennis: Oh really.
> Daniel: I said Don, you need to go up there, get some good ol' boy together, get some, get some alcohol, some, some, some uh vodka, throw it throw it through a window and light the place up and burn it right to the ground.

5

On December 11, 2007 (Call #460, 8:29:15 a.m.), Daniel Mahon discussed Hispanics at a local laundry and the need for violence.

> Daniel: It just got me thinkin' ya know? For those people to be in that laundramat (sic), of that breed, just shows how many of them there is here Denny.
> Dennis: Yeah
> Daniel: Obviously their wives are working. They're not.
> Dennis: Yeah, that's it right there.
> Daniel: That's the problem with these guys. When they get, you know, a job placed...they start getting real obnoxious, hoping the white guys will quit so they can bring their relatives in.
> Dennis: That's it right there, yeah
> Daniel: **That's why we've got to start getting violent.** You know, these God-damned whites that think this is great are in for a fucking...big fucking surprise, man. (Emphasis added.)
> Dennis: Yeah.

4.) <u>The nature and seriousness of the danger to any person or the community</u>

The bombing of the City of Scottsdale Office of Diversity and Dialogue illustrates the danger to the community posed by this defendant. The defendant's statement after the bombing reflects his continuing anger toward victim Donald Logan. During a May 1, 2007 recorded conversation, Dennis and Daniel discussed Donald Logan.

> Dennis: I wish I remember the fuckers name so I could say, how you doing nigger. How do you like those special letters you been getting in the mail? Ha. Ha. Scottsdale cops did that, guarantee it man. He's going to get it again too, believe you me.
> CI: Is that where he was at in there?
> Dennis: I think it was...administration building.
> **Daniel: Pop a cap in that god damn**...
> Dennis: I'm sure he knows it's going to happen again.
> CI: Is that where he was at in there?
> Dennis: Yeah, I think he was. He said it was where he...the administration building.
> **Daniel: Mother fucker. Pop a cop in his goddamn ass.** (Emphasis added.)

During the execution of the search warrant of June 25, 2009, agents recovered armor-piercing ammunition. Possession of armor-piercing ammunition is a felony in the State of Illinois. Daniel and Dennis were recorded in the police van discussing "AP" ammunition. Agents

also recovered an improved explosive device within the Mahon home. While this explosive device was in the bedroom of Dennis Mahon, the cumulative evidence shows that these brothers have worked together for years, if not decades.

5.) Other facts regarding detention.

The defendants face a charge with a mandatory minimum seven-year sentence. 18 U.S.C. Section 844(i). The maximum for this offense is 40 years imprisonment. The severity of punishment facing the defendant is a relevant factor which bears upon the risk of flight. United States v. Stevens, No. 04-CR-222S (W.D.N.Y. March 2, 2005); United States v. Davidson, No. 92-CR-35, 1992 WL 144641 at 6 (N.D.N.Y. June 18, 1992).

18 U.S.C. Section 3771(a)(4) affords crime victims the right to be reasonably heard at any public proceeding in the district court involving release of the defendant. The victims in this case object to the release of the defendant. The victim's input in this case was not presented to the Magistrate Judge and therefore was not a part of the Magistrate's ruling.

**IV. Conclusion.**

The government submits that United States Magistrate Judge P. Michael Mahoney incorrectly ruled that defendant, Daniel Mahon should be released to the community upon the posting of a bond. The defendant is a white supremacist who engaged in violence during a five-year conspiracy against the government and non-whites. A grand jury found his actions resulted in injuries to two innocent City of Scottsdale employees who were almost killed when a package-bomb was delivered and exploded at their government office. On June 25, 2009, when officers told the defendant and his brother they were under arrest, the defendant refused to leave his home and conducted a 30-minute standoff with police and federal agents.

It is the position of the United States that sufficient evidence exists to show that the defendant is a serious flight risk and danger to the community based on the facts and circumstances submitted before the court during the detention hearing and during this appeal, and further that there are no conditions that will reasonable assure the defendant's presence in

7

court throughout the course of this litigation or protect the community. As such, the July 1, 2009, order by Magistrate Judge P. Michael Mahoney releasing the defendant should be revoked, and the defendant should be detained as flight risk and a danger to the community pending trial.

Respectfully submitted this 6th day of July, 2009.

DIANE J. HUMETEWA
United States Attorney
District of Arizona

s/ *Michael T. Morrissey*
MICHAEL T. MORRISSEY
Assistant U.S. Attorney

s/ *John Boyle*
JOHN BOYLE
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing:

and sent via e-mail, to the following who is not a CM/ECF registrant:

Dennis Ryan
Attorney for Daniel Mahon
Ryan Law Office
700 Ray-O-Vac Drive, Suite 201
Madison, WI 53711
Tel/(608) 277-1771
Email: djeryan@sbcglobal.net