**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-09-0712-02 PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Daniel Mahon (2), | |
| Defendant. | |

The Indictment in this case charges Defendants Dennis and Daniel Mahon, twin brothers, with three counts relating to conspiracy and explosives. Count 1 alleges a conspiracy to damage buildings and property by means of explosives in violation of 18 U.S.C. §§ 844(n) and 844(i); Count 2 alleges malicious damage of buildings by means of explosives in violation of 18 U.S.C. § 844(i); Count 3 alleges distribution of information related to explosives in violation of 18 U.S.C. § 842(p)(2)(A). Dkt. #3. Dennis Mahon is charged in all counts. Daniel Mahon is charged only in Count 1.

Defendants were arrested at their parents' farm in Illinois on June 25, 2009. Dennis was detained pending trial. Magistrate Judge P. Michael Mahoney of the United States District Court for the Northern District of Illinois granted Daniel's request for pretrial release under the Bail Reform Act of 1984, 18 U.S.C. § 3142 ("Act"). The government has appealed Judge Mahoney's decision and asks this Court to detain Daniel pending trial. *See* Dkt. #13.

The Court held a hearing on August 11, 2009. Before the hearing the Court reviewed the government's appeal and its attachments, including the transcript of the hearing before

Judge Mahoney, the affidavit in support of a search warrant for the Illinois property, and an Illinois pretrial services report recommending release of Daniel pending trial. Dkt. ##13, 18-22. Counsel for the government stated at the hearing that the government intends to rely on the evidence and proffers presented to Judge Mahoney, with two additions: victim Donald Logan, who was injured in the February 26, 2004 bombing at issue in Count 2, made a statement to the Court in favor of detention, and counsel summarized similar views held by victims Renita Linyard and Jacque Bell who were present in the courtroom but did not address the Court directly. Defense counsel stated that she too would rely on the proffers and evidence presented to Judge Mahoney, with two additions: she noted that Daniel's son, Will Mahon, resides in Chandler, Arizona and was present in the courtroom in support of his father, and that Daniel's former wife also resides in the Phoenix area. Defense counsel asserted that these facts show additional ties to the community. The Court heard oral arguments on the issues addressed in this order. For the following reasons, the Court concludes that Daniel Mahon should be detained pending trial.

**A.    Legal Standards.**

This Court reviews Judge Mahoney's decision *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must "review the evidence before the magistrate" and any additional evidence submitted by the parties "and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. Under the Act, Defendant must be detained if the Court finds that no condition or combination of conditions will reasonably assure the safety of the community or his appearance at trial. 18 U.S.C. § 3142(e).

The government contends that Defendant should be detained as both a danger and a flight risk. The government must prove that Defendant is a danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f). It must prove flight risk by a preponderance of the evidence. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

In this case, the Act establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety

of the community. This presumption arises from 18 U.S.C. § 3142(e)(3)(C) and the Indictment's charge that Defendant conspired to violate 18 U.S.C. § 844(i), an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum prison term of 10 years or more is prescribed.[1] *See* Dkt. #3; 18 U.S.C. § 3142(e)(3)(C); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The statutory presumption imposes a burden of production on Defendant, but the burden of persuasion remains with the government. *Id.* The presumption does not disappear if it is rebutted, but instead "'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986)).[2]

### B. Should Defendant Be Detained as a Danger to the Community?

The Act identifies four general factors to be considered in deciding whether a defendant should be detained: the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the nature and seriousness of the danger to the community. 18 U.S.C. § 3142(g). The Court will address each factor in turn.

### 1. Nature and Circumstance of the Offense Charged.

The charges against Daniel Mahon are very serious. The Indictment alleges that Daniel entered into a conspiracy with Dennis and others to promote racial discord on behalf

---

[1] One of the overt acts alleged for the conspiracy in Count 1 is the February 26, 2004 bombing in Scottsdale, Arizona. Dkt. #3 at 2. Defendant Daniel Mahon is alleged to have violated 18 U.S.C. § 844(i) as part of this conspiracy. *Id.* at 4. The grand jury made a special finding that Donald Logan and Renita Linyard were injured in the bombing. *Id.* Because physical injuries occurred, Defendant could receive a sentence of up to 40 years in prison for this charge. *See* 18 U.S.C. § 844(i).

[2] Some courts hold that a detention order may be entered only in the six categories of cases identified in § 3142(f)(1)-(2). *See, e.g., United States v. Byrd*, 996 F.2d 106, 110 (5th Cir. 1992). The parties do not address this requirement, but the Court finds it satisfied in any event. One of the categories identified in § 3142(f) is "an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(f)(1)(A). As noted above, this requirement is satisfied by the § 844(i) charge in Count 1.

of the "White Aryan Resistance" ("WAR") by damaging and destroying buildings, facilities, and real property of both the government and businesses whose activities conflicted with Defendants' goals. Dkt. #3 at 2. Defendants allegedly conspired to deliver a bomb to the City of Scottsdale Office of Diversity and Dialogue that exploded on February 26, 2004, injuring Donald Logan and Renita Linyard. *Id.* at 2-3. The Indictment further alleges that the conspiracy included leaving a voice message with the Scottsdale office stating that "the White Aryan Resistance is growing in Scottsdale. There's a few white people who are standing up." *Id*. at 2.

The conspiracy is alleged to have included instructions to other individuals on how to engage in criminal activity, dress to avoid detection by law enforcement, and blow-up vehicles. *Id*. at 3. The conspiracy allegedly included instructions on how to blow-up a house using simple tools and a propane tank, with the caution that those preparing this destructive device should wear gloves when building or placing the bomb. *Id*. The conspiracy allegedly included instructions to other individuals on how to construct a pipe bomb that would use a 9-volt battery, black powder, an electric match, and would kill its recipient. *Id*.

As part of the conspiracy, Daniel and his brother are alleged to have planned a trip to a gun show in Catoosa, Oklahoma, for the purpose of purchasing periodicals and components related to bomb making, including books, gun powder, an electric match, and a fuse. Defendants allegedly discussed measures to avoid detection at the gun show, including traveling separately, wearing hats and sunglasses, and avoiding being seen together. *Id*.

As part of the conspiracy, Dennis allegedly demonstrated to an individual how to assemble a bomb using a cardboard box, wires, and other components. *Id*. The conspiracy allegedly included mailing instructions and materials for the making of bombs and directions that others should attack the Arizona and Texas power grids if leaders of the White Aryan Resistance – including Dennis – were arrested. *Id*.

**2.  Weight of the Evidence Against Defendant.**

The Ninth Circuit has stated that the weight of the evidence against a defendant is the least important of the factors listed in § 3142(g), but it nonetheless is a factor to be

considered. *Hir*, 517 F.3d at 1090. The evidence in this case appears to be substantial.

The Government has proffered tape recordings and affidavits from confidential informants capturing Daniel and his brother acknowledging their bomb making activities and communicating with others about the conspiracy discussed above. Daniel reported to a confidential informant that he and his brother do more than just talk about violent activities. He described his participation in drive-by shootings and blowing up cars and buildings. He said that on one occasion he blew a desk through a second floor roof. Daniel reported to the confidential informant that he did these things not out of anger, but out of duty. Such violence is like a military operation, he explained, "[y]ou planned for it, equip for it." Dkt. #13-3 at 7.

In an April 2008 recorded telephone call, Daniel related to Dennis how Daniel had urged another person to attack "a small company that's laying off all the white guys here and hiring Mexicans," saying "you need to get up there, get some good ol' boy together, get some, get some alcohol, some, some, some uh vodka, throw it throw it through a window and light the place up and burn it right to the ground." Dkt. #13 at 5. In a December 2007 recorded call, Daniel complained to Dennis about the hiring of Hispanics at a local laundry and said "[t]hat's why we've got to start getting violent." *Id*. at 6. During a May 2007 recorded call, Daniel said that he wanted to "pop a cap" in a fellow, apparently referring to Donald Logan, the victim of the February 26, 2004 bombing. *Id*.

Dennis showed a confidential informant a building on the property where Defendants' resided that was used for making bombs. Improvised bombs were found in the house where Daniel and Dennis were arrested, as were various materials describing how to make bombs. A number of weapons were also found in the house, including semi-automatic assault rifles, armor-piercing ammunition, and bulletproof vests. Dkt. ##13, 13-2.

### 3.     **History and Characteristics of Defendant.**

Daniel is 59 years old and was born and raised in Illinois. Daniel graduated from high school and received an associate's degree from Rock Valley College. From 1970 to 1979, Daniel served in the Coast Guard and Navy, from which he received honorable discharges.

1 | Daniel has one son. Daniel worked for many years in the airline industry and now draws
2 | Social Security disability benefits. At the time of his arrest, Daniel lived on his parents' farm
3 | with Dennis. Daniel and Dennis helped their aging father care for their disabled mother.
4 | Daniel has no prior criminal history.

As described above, however, Daniel is alleged to have actively participated with Dennis in the White Aryan Resistance. Daniel described himself to a confidential informant as a "domestic terrorist." Dkt. #13-3 at 21. A letter written by Dennis stated that Dennis was an Imperial Dragon of the Ku Klux Klan and that Daniel was his body guard, supporter, and a recorder of Dennis' activities. Dkt. #22-2 at 2-3.

When officers arrived at Defendants' farm house to make their arrest in late June, Defendants initially refused to leave the premises. For some 30 minutes law enforcement waited outside while Defendants made phone calls and conferred with each other. At one point, a blind was opened on an upstairs window and law enforcement retreated for their safety. Defendants eventually agreed to surrender. When officers searched the home they found an AK-47 assault rifle with loaded clips on a table in the room where Defendants had been located. Dkt. #13.

Following the arrest, Dennis stated that if law enforcement officers had arrived at 3:00 a.m. instead of 6:00 a.m. there would have been a shootout and "body bags." *Id*. While Daniel and Dennis were waiting in a car after their arrest, Dennis said "[w]e should have had a shootout." Dkt. #13-2 at 14. Daniel agreed. *Id*.

A search of Defendants' residence revealed improvised explosive devices in a bedroom used by Dennis. The devices included large steel bearings which are used to make the explosion more lethal. The search discovered other bomb-making materials and instructions within the residence, including materials on how to avoid being successfully investigated such as hiding fingerprints and avoiding traces of DNA. Materials found in the house described how to conduct assassinations, how to make mail bombs and pipe bombs, and how to obtain and use long range timers to detonate explosives. The materials included an April 2009 document entitled the "Anarchist's Cookbook" and a book on booby traps.

The search discovered a .223 caliber semi-automatic assault rifle in Daniel's bedroom, 20 rounds of armor-piercing ammunition, a 9-millimeter pistol and magazines in Daniel's car, a semi-automatic pistol in a bedroom, two shotguns, a .357 Magnum revolver, two rifles, a .45 caliber pistol, two .25 caliber semi-automatic pistols, and the AK-47 assault rifle. The search found numerous other rounds of ammunition and bulletproof vests.

Other information found in Defendants' home included a Nazi arm band, a National Socialist Bulletin, WAR materials, DVDs of WAR meetings, and a 3-ring binder of the National Socialist Brotherhood with a stated purpose of destroying Jewish world order. There was also a newspaper photograph of Osama Bin Laden with handwriting that reads "Our Hero." Dkt. #13-2 at 8-13.

### 4. Nature and Seriousness of the Danger to the Community.

The information described above suggests that Daniel and Dennis believe in the use of violence to further their political and social views. This is not a case of mere personal beliefs or First Amendment expression. As noted above, Daniel reported to a confidential informant that Daniel had engaged in drive-by shootings and had destroyed automobiles and buildings with explosive devices. The Indictment alleges that two employees of the City of Scottsdale were injured by a bomb delivered pursuant to Defendant's conspiracy. Defendants considered shooting the law enforcement officers who appeared to arrest them. At least one of their communications suggested that assaults should be made on the Arizona and Texas power grids if Dennis was arrested. The evidence suggests that Defendants intended to act violently, not merely express their views.

### 5. Analysis of the Relevant Factors.

When the four factors outlined above are considered with the statutory presumption of detention, the Court concludes that Daniel should be detained as a danger to the community. Although Daniel has no criminal history and appears at times to have led a productive life, including honorable service in the Coast Guard and Navy, the extensive evidence and destructive materials found in Defendants' home, as well as their repeatedly expressed intent to use violence to further their political and social views, strongly suggests

that Defendant is a danger to the community. The Court finds this case similar to the facts considered by the Ninth Circuit in *Hir*, and similarly concludes that "Defendant's history as a law-abiding citizen and his . . . ties to the local community do not outweigh the extremely serious nature of the offenses with which he is charged, including his willingness to provide dangerous materials for use against civilians, while attempting to disguise his role in the affair, the weight of the evidence against him, and the nature and gravity of the danger that would be posed by his release." 517 F.3d at 1091.

Defense counsel argued that the evidence primarily implicates Dennis – that Daniel was at most a minor player. The Court cannot agree. Although Dennis appears to have taken more of a leading role in white supremacist organizations than Daniel, and is charged with more counts in the Indictment, the Court cannot conclude that Daniel is a minor player with no dangerous intentions. The wiretaps and taped conversations proffered by the government show Daniel as an active, encouraging participant in the discussions of violent activities. Daniel's communications with confidential informants suggest a full knowledge of past crimes, including an understanding of when the statute of limitations would expire for those crimes. Dkt. #13-3 at 7. Following their arrest, Daniel agreed that there should have been a shootout with police. Daniel resided in a house where firearms, explosives, bomb-making instructions, armor-piercing rounds, bulletproof vests, and white-supremacist materials were found.

The Court concludes that no release condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. § 3142(e). Daniel and his brother profess to be affiliated with other individuals and groups who share their views. They have demonstrated a willingness in the past to work with others to accomplish their ends by violent means. Daniel's release, even under restrictive conditions, would not prevent him from communicating with and assisting others in carrying out their violent beliefs.

In summary, the Court finds by clear and convincing evidence that Daniel Mahon is a danger to the community. No conditions of release would reasonably ensure the safety of the community.

## C. Should Defendant Be Detained as a Flight Risk?

The government contends that no condition or combination of conditions will assure Defendant's appearance at trial. Defense counsel disagrees.

On one hand, Daniel has never been convicted of a crime and has no prior history of flight. He was residing on his parents' farm prior to his arrest where he assisted his father in caring for his disabled mother. Defense counsel also notes that Daniel's son, who resides in Chandler, Arizona, is willing to take custody of Daniel and report to the Court if his father's actions depart from the Court's conditions of release. Daniel's father appeared before Judge Mahoney and said he was willing to post his $100,000 in life savings as a cash bond to assure Daniel's appearance at trial. Judge Mahoney concluded that a $50,000 cash bond would be sufficient.

The government, on the other hand, argues that a number of factors suggest Daniel will never appear at trial. The government notes that Daniel and Dennis refused to surrender to law enforcement for some 30 minutes in late June, during which time they were in the house with an AK-47 assault rifle on the table. Following their surrender, both Defendants said they should have had a shootout with police. The government further notes that Dennis avowed never to "rot" in jail, and instructed others to attack the Arizona and Texas power grids if he was arrested.

The Court finds this to be a close question. Although Daniel has no criminal history and could reside with family members in Illinois or Arizona, and although Daniel's father would post a substantial cash bond to assure his appearance, Daniel has described himself as a domestic terrorist and has espoused views against not only minority groups but the government generally. Daniel agreed following his arrest that the brothers should have had a shootout with police. He has affiliated himself with Dennis and his activities – and Dennis clearly has asserted that actions by law enforcement should be met with violence.

The Court concludes, by a preponderance of the evidence, that no condition or combination of conditions will assure Daniel's appearance at trial. The Court has weighed not only the factors set forth above, but also the statutory presumption found in 18 U.S.C.

§ 3142(e)(3)(C) and the fact that Daniel could receive a sentence of up to 40 years if convicted.

**IT IS ORDERED:**

1. Magistrate Judge Mahoney's decision is **reversed**.

2. Defendant Daniel Mahon will be detained pending trial.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D) is found to commence on July 2, 2009 for a total of 41 days.

DATED this 11th day of August, 2009.

_____
David G. Campbell
United States District Judge

cc: USMS