Barbara Hull, State Bar No. 011890
637 North Third Avenue, Suite Three
Phoenix, Arizona 85003
Telephone: (623)465-1705
Facsimile: (623)465-1706
blhull@q.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DANIEL MAHON,<br><br>　　　　Defendant. | Case No.: CR09-0712-02-PHX-DGC<br><br>**DEFENDANT DANIEL MAHON'S MOTION TO SUPPRESS FOR VIOLATION OF MIRANDA**<br><br>**EVIDENTIARY HEARING AND ORAL ARGUMENT REQUESTED**<br><br>**(Assigned to The Honorable David G. Campbell)** |

　　　　Defendant Daniel Mahon, by and through undersigned counsel, hereby moves to preclude statements for violation of Miranda v. Arizona, 84 S.Ct. 1602, 384 U.S. 436, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), Crawford v. Washington, 124 S.Ct. 1354, 541 U.S. 36, 158 L.Ed.2d 177 (U.S. 03/08/2004) and the 5th and 6th Amendments to the Constitution.  This motion is supported by the attached Memorandum of Points and Authorities.

　　　　RESPECTFULLY SUBMITTED this 5th day of August, 2010.

　　　　　　　　　　　　　　　　　　　　_/s/ Barbara L. Hull_____
　　　　　　　　　　　　　　　　　　　　Barbara L. Hull, Attorney for Daniel Mahon

# MEMORANDUM OF POINTS AND AUTHORITIES

Relevant Facts

On June 16, 2009, Defendant Daniel Mahon was charged in Count One of a three-Count Indictment for Conspiracy To Damage Buildings And Property by Means of Explosive, 18 U.S.C. §§844(n) and 844(i). Both defendants were arrested in Illinois on June 25, 2009.

After both Defendants were Mirandized, both invoked. These rights were recorded. Both men were arrested, handcuffed and placed in a van. In that van was a surreptitious audio/video-recording device. At or just prior to the placement of both gentlemen into that van, the recording device in the van was turned on with the sole purpose of recording any and all statements of both men, despite their invocations. The audio recordings also captured two officers conversing about the business card from a lawyer found at the scene prior to placement of defendants into the rigged van.

UKM I just want to pass one thing to you, when my guys first went in, they saw an attorney's card - -

UKF     - - Ok - -

UKM - - Business card laying on the table apparently they already made a phone call. Just so you know. For what ever reason.

(Audio recording numbered E-227.) At least one officer told both Messrs. Mahon that no questions would be asked, yet stated "Alright I'm just gonna read it [Miranda rights] to you before I ask any questions," (E-227) then placed Defendants in the pre-wired van. Two agents entered the van at a later point and continued conversing with both gentlemen.

Formal charges had been filed, both men were arrested and Mirandized, Daniel Mahon invoked, ATF agents questioned both and conversed with both prior

and subsequent to Miranda, both Mahons were placed in custody prior to placement in the van, statements of both were made prior and subsequent to placement in the van, statements from both were them obtained surreptitiously without the assistance of counsel while in the van.

Legal Argument

"Because we value the right to counsel so highly, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), when the right to counsel is violated, then the conviction obtained as a direct result must be set aside. This is the rule because it is impossible to foresee what advice would have been given defendant had he been able to confer privately with counsel. It is quite possible that he would have been instructed to obtain, in some manner, exculpatory evidence. Holland, 147 Ariz. at 456, 711 P.2d at 595. See also State v. Sanders, 194 Ariz. 156, ¶9, 978 P.2d 133, ¶9 (App. 1998) ("The remedy for a violation of the right to counsel . . . is dismissal.")."

"We agree that Miranda, supra, and Wade, supra, declare that the right to counsel at pretrial confrontations with police is not only required to protect the defendant's Fifth Amendment rights, but the right to counsel is guaranteed whenever counsel is necessary to preserve defendant's right to a fair trial. As stated in Wade supra: "* * * [W]e scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." (Emphasis in original) 87 S.Ct. at 1932." State v. Ramos, 463 P.2d 91, 11 Ariz. App. 196 (Ariz.App.Div.2 12/23/1969)

Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), "... The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. As noted above, *this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. ... The Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent.* Maine v. Moulton, 474 U.S. 159, 176, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985) (footnote omitted), relying upon Massiah v. United States, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964), and United States v. Henry, 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183 (1980) (emphasis added).

"The Miranda rule would be frustrated were the police permitted to undermine its meaning and effect." Missouri v. Seibert, 124 S.Ct. 2601, 542 U.S. 600, 159 L.Ed.2d 643 (U.S. 06/28/2004). And any purported "waiver must be 'the product of a free and deliberate choice rather than intimidation, coercion, *or deception'* and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' Moran v. Burbine, 475 U. S. 412, 421." Berghuis v. Thompkins, No. 08-1470 (U.S. 06/01/2010) (emphasis added).

Under Innis [Rhode Island v. Innis, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)], "interrogation within Miranda's requirements applies (1) to express questioning or (2) to the 'functional equivalent' thereof. Words or action by police are the "functional equivalent" of express questioning *when police should know that their words or actions are reasonably likely to elicit an incriminating response.*" United States v. Brown, 720 F.2d 1059 (9th Cir. 11/18/1983) (emphasis added.)

When a government agent chooses to violate a defendant's Sixth Amendment rights in order to gather additional information, that agent "must be prepared to live with the consequences of that decision." United States v. Kimball, 884 F.2d 1274, 1280 (9th Cir. 1989)."

Daniel Mahon's exercise of his right to remain silent attached, and afterward he was placed in physical environment designed for the purpose of eliciting statements, making it the functional equivalent of interrogation. While at least one officer indicated they intended to ask no questions, not one officer informed Mr. Daniel Mahon that his statements would be recorded, regardless of whether they followed questions, or how remotely in time they followed questions.

The constitutionally protected, and here invoked, right to remain silent must include expectation of privacy. ". . . [T]he Court has often stated that one of the several purposes served by the constitutional privilege against compelled testimonial self-incrimination is that of protecting personal privacy. See, e.g., Murphy v. Waterfront Comm'n, 378 U.S. 52, 55 (1964); Couch v. United States, supra, at 332, 335-336; Tehan v. United States ex rel. Shott, 382 U.S. 406, 416 (1966); Davis v. United States, 328 U.S. 582, 587 (1946)." Fish et al. v. United States et al., S. Ct. 1569, 425 U.S. 391 (U.S. 04/21/1976).

In Fisher, supra, beginning at 425 U.S. at 415, Justice Brennan, concurring in judgment, but dissenting in opinion, outlined the protection of privacy incorporated in both the Fourth and Fifth Amendments:

> I do not join the Court's opinion, however, because of the portent of much of what is said of a serious crippling of the protection secured by the privilege against compelled production of one's private books and papers. Like today's decision in United States v. Miller, post, p. 435, it is but another step in the denigration of privacy principles settled nearly 100 years ago in Boyd v. United States, 116 U.S. 616 (1886).. . . [H]istory and this Court have construed the constitutional privilege to safeguard against governmental intrusions of personal

privacy to compel either self-incriminating oral statements or the production of self-incriminating evidence recorded in one's private books and papers. Although as phrased in the Fifth Amendment - "nor shall [any person] be compelled in any criminal case to be a witness against himself" - the [Fifth Amendment] privilege makes no express reference, as does the Fourth Amendment, to "papers, and effects," private papers have long been held to have the protection of the privilege, designed as it is "to maintain inviolate large areas of personal privacy." Feldman v. United States, 322 U.S. 487, 490 (1944). . . . Expressions are legion in opinions of this Court that the protection of personal privacy is a central purpose of the privilege against compelled self-incrimination. "[I]t is the invasion of [a person's] indefeasible right of personal security, personal liberty and private property" "that constitutes the essence of the offence" that violates the privilege. Boyd v. United States, supra, at 630. The privilege reflects "our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life.'" Murphy v. Waterfront Comm'n, 378 U.S. 52, 55 (1964). "It respects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation." Couch v. United States, supra, at 327. See also Tehan v. United States ex rel. Shott, 382 U.S. 406, 416 (1966); Miranda v. Arizona, 384 U.S. 436, 460, (1966). *"The Fifth Amendment in its Self-Incrimination Clause enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment." Griswold v. Connecticut, 381 U.S. 479, 484 (1965). See also Katz v. United States, 389 U.S. 347, 350 n. 5 (1967).*

     The Court pays lip service to this bedrock premise of privacy in the statement that "[w]ithin the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests," ante, at 399. But this only makes explicit what elsewhere highlights the opinion, namely, the view that protection of personal privacy is merely a by product and not, as our precedents and history teach, a factor controlling in part the determination of the scope of the privilege. This cart-before-the-horse approach is fundamentally at odds with the settled principle that the scope of the privilege is not constrained by the limits of the wording of the Fifth Amendment but has the reach necessary to protect the cherished value of privacy which it safeguards. See Schmerber v.

California, 384 U.S. 757, 761-762, n. 6 (1966). The "Court has always construed provisions of the Constitution having regard to the principles upon which it was established. The direct operation or literal meaning of the words used do not measure the purpose or scope of its provisions...." United States v. Lefkowitz, 285 U.S. 452, 467 (1932). "It has been repeatedly decided that [the Fifth Amendment] should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by [it], by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers." Gouled v. United States, 255 U.S. 298, 304 (1921). See Maness v. Meyers, 419 U.S. 449, 461 (1975). History and principle, not the mechanical application of its wording, have been the life of the Amendment. . . . History and principle teach that the privacy protected by the Fifth Amendment extends not just to the individual's immediate declarations, oral or written, but also to his testimonial materials in the form of books and papers."

"The roots lie deep in historical perceptions that a person should not be moved to incriminate himself except upon understanding and deliberation. Police are not mandated to warn suspects of their rights to silence and to counsel so that criminals can avert justice, but because the requirement accords with our own principles of justice and results from long and empirical chronicling of what may happen to those in custody. Therefore, whether by blunt demand *or indirect suggestion, by art or pretense, in whatever manner the police seek to induce response from the prisoner himself*, the Miranda right applies and the burden is on the Government to prove that any speech product it wishes to use resulted without its contrivance." United States v. Brown, 720 F.2d 1059 (9th Cir. 11/18/1983) (emphasis added).

When, as here, the government designed a physical environment to be the functional equivalent of interrogation -- first Mirandizing, claiming no questions will be asked, then asking questions, then purposely creating the illusion of privacy

and lack of questioning -- the defendant's constitutional rights are violated. The government may take pleasure in its attempts to circumnavigate constitutional rights, but these ruses and unprofessional games of trickery should not be tolerated in the face of protected rights.

Daniel Mahon invoked his Miranda rights, thereby invoking both his right to remain silent and to counsel. Even the officers at the scene acknowledged that an attorney had already been contacted on defendants' behalf. Whether by art or pretense or indirect suggestion or subterfuge, it follows that statements obtained subsequent to invocation of either or both privilege must be precluded as in violation of Daniel Mahon's right to remain silent and to counsel. To accept any other reading of Miranda and its progeny would be to accept as constitutional the prosecution's installation of recording devices, and without notice to defendants, in jail cells or in attorney's offices, or to permit wiretaps without probable cause. All the officers would have to do is read Miranda, then lead defendant into a wired room with other suspects, with his/her counsel, and/or record his/her conversations, be it on the telephone or live, without further notice or due process. This result would be tantamount to a clear abuse of power and violation of constitutional rights.

WHEREFORE, Defendant moves that this Court preclude all statements of Defendants obtained subsequent to invocation of Miranda. Furthermore, Defendant requests an evidentiary hearing to present the audio and audio/visual recordings referenced.

RESPECTFULLY SUBMITTED this 5th day of August, 2010.

        __/s/ Barbara L. Hull_____
        Barbara L. Hull, Attorney for Daniel Mahon

Original filed electronically this date.

Courtesy copy of the foregoing sent electronically this date with accompanying draft Order to:

The Honorable David G. Campbell
United States District Court
401 West Washington Street
Phoenix, Arizona 85003
at: Campbell_chambers@azd.uscourts.gov

Deborah Williams, Esq.
Milagros Cisneros, Esq.
Assistant Federal Public Defenders
District of Arizona
850 West Adams, Suite 201
Phoenix, Arizona 85007-2730
Attorneys for Mr. Dennis Mahon
at: Deborah_Williams@fd.org

Michael Morrissey, Esq.
John Boyle, Esq.
Assistant United States Attorney
Two Renaissance Square, Suite 1200
40 North Central Avenue
Phoenix, Arizona 85003-4408
at: John.Boyle@usdoj.gov


__/s/ Barbara L. Hull_____