**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **CR 09-00712-PHX-DGC** |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | July 7, 2010 |
| Dennis Mahon and Daniel Mahon, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DAVID G. CAMPBELL, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**<u>MOTION HEARING</u>**

Official Court Reporter:
Patricia Lyons, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 41
Phoenix, Arizona  85003-2150
(602) 322-7257

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                          **A P P E A R A N C E S**

2

3    For the Government:

4            U.S. Attorneys Office
             By:  **MICHAEL T. MORRISSEY,** ESQ.
5            By:  **JOHN Z. BOYLE,** ESQ.
             40 North Central Ave., Ste 1200
6            Phoenix, AZ  85004

7

8

9    For Defendant Dennis Mahon:

10           Federal Public Defender's Office
             By:  **DEBORAH L. WILLIAMS,** ESQ.
11           850 W. Adams St., Ste 201
             Phoenix, AZ  85007
12

13   For Defendant Daniel Mahon:

14           Law Office of Barbara L. Hull
             By:  **BARBARA L. HULL,** ESQ.
15           637 N. 3rd Ave., Ste 3
             Phoenix, AZ  85003
16

17

18

19

20

21

22

23

24

25

1                          **P R O C E E D I N G S**

2

3              THE COURTROOM DEPUTY:  Criminal case 09-712, United

4      States of America versus Dennis Mahon and Daniel Mahon.  This

10:00:15  5    is the time set for motion hearing.

6              MR. BOYLE:  Good morning, Your Honor.  John Boyle and

7      Michael Morrissey on behalf of the United States.

8              THE COURT:  Good morning.

9              MS. WILLIAMS:  Morning, Your Honor.  Deborah Williams

10:00:23  10   on behalf of Dennis Mahon, who is present.

11             THE COURT:  Good morning.

12             Morning, Mr. Mahon.

13             MS. HULL:  Morning, Your Honor.  Barbara Hull with

14     Mr. Daniel Mahon, who is present and in custody.

10:00:32  15            THE COURT:  Good morning.

16             Good morning, Mr. Mahon.

17             All right.  Our purpose today is for a hearing on

18     three motions that the defendants have filed.  One is a motion

19     for a Bill of Particulars that was filed by Dennis Mahon and

10:00:49  20   joined by Daniel Mahon.

21             The second is a motion to dismiss count 1 as

22     duplicitous, filed by Dennis Mahon.

23             And a separate motion to dismiss the same count as

24     duplicitous filed by Daniel Mahon.

10:01:07  25            I have read all of the briefs provided by the

10:01:09    1    parties, so I don't need you to recount the basic points

2    you've made.  I think I understand the arguments.  I think

3    what I'd like to do is allow about 15 minutes a side for you

4    to argue the things that you think are most relevant now that

10:01:23    5    the briefing has been completed.  And since all of these are

6    defense motions, we'll have defense counsel go first.

7         MS. WILLIAMS:  Your Honor, to the extent that if the

8    Court is viewing Ms. Hull's supplement where she filed a motion

9    of duplicity as a separate motion to dismiss, then for the

10:02:00    10   record I would join in that motion.  I have not formally done

11   so because I viewed it as a supplement and therefore part of

12   the same motion, but I do join.

13        THE COURT:  All right.

14        MS. WILLIAMS:  And, Your Honor, I view these two

10:02:12    15   motions as very connected and so, unless the Court objects, I

16   would like to move back and forth between them.  Because I

17   believe the motion to dismiss count 1 as duplicitous

18   underscores and demonstrates why a Bill of Particulars are

19   needed.  As we discussed in both of them, we feel there are

10:02:38    20   three very distinct and very clear conspiracies alleged in the

21   indictment.  And we had -- for ease of discussion, we had

22   alternately named them the bombing conspiracy, the arrest

23   conspiracy, and --

24        THE COURT:  The sting conspiracy.

10:02:58    25        MS. WILLIAMS:  -- the sting conspiracy.  Thank you.

10:03:03  1        The -- each conspiracy, as we've discussed in the

2    motions, has its own time -- own distinct time period.  And

3    I've used each conspiracy for purposes of argument only

4    because we steadfastly denied any and all of the acts in the

10:03:20  5    indictment.

6        However, each conspiracy has its own distinct time

7    period, each conspiracy has its own players, and each

8    conspiracy has its own distinct object.  There is no overlap.

9        The case, as presented by the government, as

10:03:40 10    presented to the press, as presented to Mr. Logan, and as

11    presented from the day it walked into the court, this case is

12    about the bombing of Don Logan.

13        On July 26, 2009 the U.S. Attorney's office, in

14    conjunction with Scottsdale police, postal, and ATF, issued a

10:04:05 15    two-page press statement announcing the arrest of the Mahon

16    brothers and introducing the indictment to the public.  The

17    entire first page of the press announcement talked about this

18    being the cumulation of the multi-year investigation into the

19    bombing of the Scottsdale Office of Diversity and Dialogue,

10:04:29 20    and then goes on through each paragraph of the first page to

21    discuss the bombing of Mr. Logan, his injuries, the injuries

22    to others, et cetera.  It is not until we get well into page 2

23    that we hear about other acts.

24        Clearly, the focus, as presented by the government in

10:04:54 25    its own press release on its indictment, is the bombing of

10:04:58   1   Mr. Logan.  That's what the case is supposedly all about.

           2          However, as it's then presented to us in court by the

           3   government is, well, we have this actual overarching

           4   conspiracy that starts back in '03, extends to '09, and it

10:05:18   5   involves anything and everything these two gentlemen have said

           6   or done or been alleged to have said or done at all sorts of

           7   points in time.  And in the discovery, it's clear when I say

           8   all points in time, we're talking about 1980s, 1990s, early

           9   2000s.  But the time period encompassed in this indictment is

10:05:47  10   a very tight period of time that was the bombing of the

          11   Scottsdale office; a very tight period of time a year later

          12   when the CI was implanted in the Catoosa trailer park where

          13   the Mahons were living at the time; and then a very, very,

          14   very tight time period in 2009 which, and I totally agree with

10:06:15  15   Ms. Hull, is tacked on to the indictment for purposes of

          16   saving an expired statute of limitations.  An act which

          17   involved something that may not -- may not ever happen, it may

          18   not come to pass, it's completely contingent, it is the,

          19   "Well, gee, if we're ever arrested, this should happen."

10:06:40  20          And I believe, Your Honor, as an important aside,

          21   that as to that particular conversation that they say is yet

          22   another bombing plot or explosive plot, this is a First

          23   Amendment protected conversation.  It does not -- it is not

          24   Dennis Mahon instructing somebody who he oversees or who he

10:07:06  25   directs or who he has any control over, it is Dennis Mahon

10:07:13  1    just talking.  Which, as you will learn in coming months, is

2    something that he does incessantly and uncontrollably.

3         THE COURT:  Well, what you've just made is a

4    "sufficiency of the evidence" argument -- right? -- with

10:07:26  5    respect to that last --

6         MS. WILLIAMS:  Your Honor, I can see how you -- how it

7    would seem so, and I'm sure the government will argue that.

8    But, in fact, the indictment on its face charges something that

9    is First Amendment protected speech.

10:07:45 10         THE COURT:  Well, but sounds like a "motion to dismiss

11    for failure to state a claim"-type argument rather than a

12    "motion to dismiss based on duplicity" argument.

13         MS. WILLIAMS:  And that, Your Honor, once we get the

14    Bill of Particulars figured out and we get it figured out how

10:08:04 15    many conspiracies we've actually got going here, that will

16    probably come in that form.  But I want to introduce these

17    points right now because these are all the very important

18    issues that are making it so difficult to figure out what this

19    case is really about.  Because there's so many presentations of

10:08:26 20    it by so many agents and agencies of the government, including

21    the government prosecutors.

22         There is a comment in the Bill of Particulars that

23    this is a relatively simple, straightforward case, and I'm

24    incorrectly paraphrasing it, but that was the gist.  When in

10:08:46 25    fact we all agreed and mutually signed and presented, I

10:08:50   1    believe, a motion to have this case designated as complex,

2    which it surely is, because of the fact that the farther into

3    it we go, the more clear it becomes that we've got these three

4    distinct time periods, three distinct set of actors, three

10:09:08   5    distinct conspiracies, if you will, and no overlap.  And there

6    is also the overarching allegation that everything that is

7    done, everything that is said, is on behalf of WAR, an

8    organization which as of 2006 no longer existed.

9              THE COURT:  Well, that sounds like a "sufficiency of

10:09:33  10    the evidence" argument as well.

11              MS. WILLIAMS:  And that certainly will be an issue at

12    trial, Judge, and I understand how you could see that, but the

13    tapes will show that very clearly.

14              I believe, Your Honor, that to look at this as an

10:09:52  15    overarching one giant conspiracy conducted on behalf of WAR or

16    on behalf of the white race, or whatever the theory might be

17    by the time we get to trial, it's kind of like saying,

18    especially with respect to that third conspiracy, it's like

19    saying if we -- sitting down and saying to somebody, you know,

10:10:18  20    "If we lose the war in Iraq or Afghanistan, we should shoot

21    some politicians."  It is talk.  It is about an event that may

22    or may not happen.  It is a talk without form, it's talk

23    without substance, it's talk without any particularities.

24              THE COURT:  Ms. Williams, again you're arguing the

10:10:44  25    sufficiency of the evidence, right?

10:10:50  1        MS. WILLIAMS:  Your Honor, I believe if the Court

       2    grants us the Bill of Particulars, we will be able to further

       3    flesh these out and to, frankly, further figure out what is an

       4    evidentiary issue here, because we have such a -- frankly, such

10:11:06  5    a vague over-encompassing indictment.

       6        THE COURT:  Well, on that point, if I were to grant

       7    you a Bill of Particulars, we know what the government's

       8    response would be to your question, how many conspiracies are

       9    there, because the government gave that answer in its response.

10:11:21 10    It said there's one.

      11        MS. WILLIAMS:  I saw that.

      12        THE COURT:  You might think they can't prove it, but

      13    they have made it quite clear they're going forward with this

      14    case on the theory that there is one overarching conspiracy.

10:11:35 15    Right?

      16        MS. WILLIAMS:  That is their theory, yes.

      17        THE COURT:  So how will a Bill of Particulars help you

      18    on that?  All they'll say is there's one, it's an overarching

      19    conspiracy.

10:11:53 20        MS. WILLIAMS:  Your Honor, I believe on that

      21    particular point -- excuse me, I'm looking for the specific

      22    questions we were asking.  I believe on the particular point,

      23    and of course that moves us back into the duplicity issue, but

      24    if they want to argue that that is -- that that is one

10:12:15 25    conspiracy, then for purposes of the Bill of Particulars, I

10:12:21  1    guess, yes, that question is answered.  And then we move back

       2    into the motion for duplicity.

       3          In our second question, we had asked for the names of

       4    the others known and unknown.  Now, I understand that the case

10:12:39  5    law on that issue is not good.  However, there's also an issue

       6    of fundamental fairness here.

       7          And what I'm -- what I'm thinking about, and perhaps

       8    this is an issue that the Court would want to deal with later

       9    in a different type of motion, and I'm happy to do that, but

10:13:00 10    by allowing the government to stand on such a broad statement,

      11    we go forward to trial, especially with this indictment which

      12    we believe encompasses so many, so many conspiracies, and

      13    potentially so many unnamed coconspirators, because we just

      14    have no way of knowing, that we are literally in a position of

10:13:27 15    being sandbagged at trial by statements attributed to these

      16    unnamed, unknown coconspirators who we have not seen in the

      17    discovery.  As I said, if you want that brought forward at a

      18    different time in a different motion, we can certainly do

      19    that.

10:13:45 20          THE COURT:  Well, if the government has a Rule 16

      21    obligation to produce the evidence to you that they would use

      22    to show what these unnamed coconspirators did or who they were,

      23    and they haven't met that Rule 16 obligation, then don't you

      24    have a pretty strong argument at trial that the government

10:14:05 25    should not be permitted to use that evidence?

10:14:09   1          MS. WILLIAMS:  I would certainly hope so, Your Honor,

           2    yes.

           3          THE COURT:  I mean, isn't this a Rule 16 issue?  The

           4    case law is very clear that you can't use a bill of particulars

10:14:18   5    to get the names of unnamed coconspirators, and if the

           6    government -- if you believe the government's obligated to

           7    disclose it under Rule 16 and you're right on that point and

           8    the government doesn't disclose it, that seems to be the answer

           9    to your problem, isn't it?

10:14:36  10          MS. WILLIAMS:  If it were -- if it were strictly a

          11    Rule 16 issue, yes, Your Honor.  I would anticipate that the

          12    government's answer would be, A, it's not Rule 16, B, it's

          13    Jencks and, C, we'll either not disclose it or we'll disclose

          14    it at a later time.

10:14:58  15          THE COURT:  Well, and if that's their position, then

          16    what I have to do is rule on whether that position is correct

          17    when it becomes an issue.

          18          MS. WILLIAMS:  Right.

          19          THE COURT:  But that doesn't mean I have to grant a

10:15:09  20    bill of particulars today in the face of case law which says

          21    you can't use it for that purpose.

          22          MS. WILLIAMS:  On that point -- on that point, Judge,

          23    I would agree that the case law is bad for us on that number 2

          24    point.

10:15:23  25          Number 3 asked for the manner in which each defendant

10:15:32   1   and others known and unknown to the grand jury allegedly

           2   agreed and the times and places of those agreements.  Because

           3   agreement is the crux of the case, it is the crux of the

           4   conspiracy, I believe that the defendants must be told that.

10:15:55   5   And, again, that takes us back into the others known and

           6   unknown to the grand jury.

           7           As to the issues in number 4 --

           8           THE COURT:  Number 4 the government answered, didn't

           9   it?  The government said in its response the answer to number 4

10:16:28  10   is the Scottsdale property that was bombed and the Arizona and

          11   Texas power grids.  Those are the buildings and real property

          12   that are referred to in the indictment.

          13           MS. WILLIAMS:  Well, Judge, if there was such a

          14   structure as "the power grid," then I might agree.  However,

10:16:49  15   the power grid is a -- is a loosely woven connection, if you

          16   will, of power lines that are specific to states and specific

          17   to reasons, and to just say "the power grid in Arizona or

          18   Texas" identifies nothing.  That's why I believe that that

          19   point needs to be clarified.

10:17:29  20           And numbers 5 and 6 both relate to the White Aryan

          21   Resistence:  5 being acts committed to promote; 6 being acts

          22   conducted on behalf of.  And given the absence of information

          23   on that in the discovery and in the indictment, I believe that

          24   the government should be forced to clarify what that refers

10:17:58  25   to, what specific acts are alleged to be on behalf of and

10:18:05  1   promoting this organization, which, again, ceased to exist in

       2   '06.

       3          THE COURT:  There again the government responded.  It

       4   said all the overt acts are alleged to have been committed to

10:18:19  5   promote racial discord and all of them were conducted on behalf

       6   of WAR.  Now, again, you may think the government can't prove

       7   that, but the government has made it clear that that's its

       8   allegation.  So what more do you need in a bill of particulars?

       9          MS. WILLIAMS:  Then what we need in addition, Your

10:18:35 10   Honor, is an answer to the question of how did -- how did they

      11   connect to WAR?  How did they support WAR?  How did they

      12   promote WAR?

      13          THE COURT:  So you think I should require them to show

      14   you their evidence?

10:18:50 15          MS. WILLIAMS:  At this point, yes, since we're

      16   supposedly getting all this discovery that should be giving us

      17   these answers, and it isn't.

      18          THE COURT:  All right.  Did you have other points you

      19   wanted to make, Ms. Williams?

10:19:11 20          MS. WILLIAMS:  I believe at this point, Your Honor, I

      21   will defer to Ms. Hull.

      22          THE COURT:  Okay.  Thanks.

      23          MS. HULL:  Thank you, Your Honor.

      24          My approach to this is perhaps much simpler

10:19:38 25   because -- and I think that it is -- perhaps I can try to

10:19:47  1    express it more succinctly as to -- especially given the

2    Court's comments and questions to Ms. Williams.

3            The Court, again, I'm paraphrasing, but the Court

4    just discussed with Ms. Williams the concept that the

10:20:05  5    government has responded to the question in the indictment as

6    the conspiracy to do what?  The conspiracy is to promote

7    racial discord on behalf of WAR.  To bomb property or objects

8    on behalf of WAR.  And while my approach may be rather

9    simplistic, but it seems to me if you step outside that

10:20:35 10    argument there's, particularly from my client, issues of,

11    okay, well, we're in federal court and what in that phrase

12    establishes jurisdiction in this court?  If this conspiracy is

13    to bomb things on behalf of WAR, what things?

14            And it boils down, to me at least, in addition to the

10:21:03 15    fact that this is all supposedly on behalf of WAR and there's

16    no evidence that my client was ever involved in WAR, the

17    government has provided not one stitch that my client was ever

18    involved in WAR in any respect, ever, that the issue of the

19    question of what exactly is a power grid?  What is a power

10:21:29 20    grid and where is it?

21            And I think that the government's -- I'm going to

22    call it a dance around this issue, shows up throughout its

23    pleadings.  For example -- and just a simple comparison would

24    be in Document 309 at page 2.  They responded to the

10:21:54 25    original -- it was a motion to dismiss back in March that this

10:21:59  1   was a conspiracy to bomb on behalf of WAR.  Then in the most

       2   recent response, Document 340, conspiracy to bomb buildings

       3   and property on behalf of WAR.  Well, which ones?

       4       The object of the conspiracy has to be a federal

10:22:20  5   crime.  It can't be a conspiracy to commit a state crime.  And

       6   if this power grid cannot even be defined, let alone placed in

       7   any particular jurisdiction, then that is an issue that I

       8   absolutely intend to raise.

       9       How does this court have jurisdiction, number one,

10:22:45 10   and, number two, given the fact that the government cannot

      11   seem to pinpoint this issue tells me two things:  One, that

      12   we're going to waste an inordinate amount of time on pretrial

      13   motions, taking, you know, just a shotgun approach as to what

      14   it is we're supposed to be responding to and attacking, and

10:23:05 15   the Court wasting time reviewing these and when it could just

      16   simply say, okay, what is the object of this conspiracy?  If

      17   your indictment is talking about an overreaching or

      18   overarching conspiracy, conspiracy to do what?

      19       THE COURT:  Well, Ms. Hull, I mean, they have answered

10:23:26 20   that question.  They say it's a conspiracy to bomb property on

      21   behalf of WAR and to promote racial discord.  What you're

      22   arguing, I think, is that if one of the objects of that

      23   conspiracy is to bomb something that isn't in interstate

      24   commerce, then it's not a federal crime.

10:23:47 25       MS. HULL:  Correct.

10:23:48   1          THE COURT:  That's not a duplicity argument and it's

           2   not a bill of particulars argument, it's a sufficiency of the

           3   evidence argument or a jurisdictional argument.  So I'm having

           4   trouble -- I understand the point you're raising, and I think

10:23:58   5   in fact you've raised it, or one of you have, in the next

           6   motion that's been filed arguing there's no interstate commerce

           7   connection.  But when it comes to ruling on duplicity and the

           8   bill of particulars, I'm having trouble understanding how that

           9   point suggests I should grant either of those motions.

10:24:18  10          MS. HULL:  Again, Judge, for me at least, I think --

          11   and it may just be that I have missed it somewhere along the

          12   line in the descriptions the government has given as to the

          13   object of the conspiracy and what power grid we're talking

          14   about.  And if they have, as I believe they've done on at least

10:24:40  15   one occasion, is talk about the power grid, quote, unquote, in

          16   Arizona or Texas.  And, again, I think that the indictment has

          17   to be sufficient for us to understand and defend.  And I think

          18   that without the government being required to tell us -- well,

          19   it can't be Arizona or Texas, for example.  It had better be at

10:25:08  20   least Arizona.  And they haven't even gone that far, Judge.  So

          21   I think that --

          22          THE COURT:  Well, you're focusing on overt act 14.

          23   That's the only part of count 1 that talks about the power

          24   grid, as I read count 1.

10:25:26  25          MS. HULL:  Correct.  Correct.

10:25:28  1    THE COURT:  What is it that you are saying you need to

2    know in order to prepare a defense to that?

3    MS. HULL:  Which power grid we're talking about.

4    That's all I'm asking.  What power grid?  Because we have gone

10:25:44  5    through thousands of pages here trying to figure out what power

6    grid are we talking about?  Because I think several months ago

7    I put in a pleading there are power grids that supply Phoenix

8    alone, multiple.  And if we're talking about one of those,

9    we're talking about a different motion than we're talking about

10:26:03 10    if, for example, it's in Texas or -- there has to be some

11    definition.  I think it violates due process that we don't know

12    what power grid they're talking about.

13    THE COURT:  And if the government comes back and says

14    "We're not talking about a specific power grid, we're talking

10:26:20 15    about a conspiracy to blow up power lines somewhere that was

16    agreed upon among the defendants with the overt act being the

17    discussion to do that, and that's enough to prove the crime, we

18    don't have to prove that it was transformer in Pima County or a

19    transformer near Waco, Texas, we just have to prove that they

10:26:44 20    agreed that somebody would attack the power grid and they took

21    an overt act in support of that," if the government says that,

22    is that a sufficient response to a bill of particulars?  I

23    mean, you then know what their position is.  And you may argue

24    that's legally insufficient, but they told you their full

10:27:06 25    theory.

10:27:07   1          MS. HULL:  Then I would ask you to make them say that,

           2   Judge, because then I have a whole different set of motions to

           3   dismiss than I would if they would name a particular, any

           4   particular, power grid.  And then I will proceed from there.

10:27:23   5   But they haven't even done that.

           6          That's all I have, sir.  Thank you.

           7          THE COURT:  Okay.  Thanks.

           8          Mr. Boyle.

           9          MR. BOYLE:  I think the dispute that we have here is

10:27:41  10   there's a real distinction between conspiracy and a substantive

          11   act crime.  In a conspiracy is the agreement with the overt act

          12   and the defendant's intent.  And I think that addresses the

          13   power act -- the power grid question that we don't have to

          14   define a certain power grid or substation in Arizona or Texas

10:28:00  15   because they're not charged with the substantive act of

          16   conspiring to bomb a specific point.  It's an overt act to show

          17   their intent in this conspiracy and to prove that there was an

          18   agreement.

          19          THE COURT:  Well, but let me interrupt you for a

10:28:16  20   minute, Mr. Boyle.  I understand that may be your response to

          21   the substantive argument that is being made here, that failure

          22   to specify a power grid is failure to -- is fatal to your

          23   claim.  But isn't it fair to require you to tell the defendants

          24   if you're thinking of a particular power grid?  Or --

10:28:40  25          MR. BOYLE:  Sure --

10:28:41   1          THE COURT:  -- if you're dealing with just power grid

          2   as a general description of the kind of facility that would be

          3   attacked?

          4          MR. BOYLE:  Yes, I agree.  And there is no specific

10:28:51   5   power grid, except to the extent Dennis Mahon said with some

          6   particularity that was it was a 900,000 volt power grid

          7   station.  Other --

          8          THE COURT:  But you don't know what station he was

          9   referring to?

10:29:05  10          MR. BOYLE:  No.

         11          THE COURT:  And at trial you're not going to suggest

         12   to the jury he had in mind the 900 volt station out by the Palo

         13   Verde nuclear power plant.

         14          MR. BOYLE:  We're not.  No question.  Whether he

10:29:18  15   thought there was one, I don't know.  But --

         16          THE COURT:  But you don't know what it was?

         17          MR. BOYLE:  We have not identified one.  And this

         18   brings into another point, it's a little bit off, this

         19   particular question, but the idea of coconspirators.  The law

10:29:37  20   is very clear we don't have to announce coconspirators, but I

         21   will tell you there is no effort to hide the ball by the

         22   government here.

         23          At this point, I'll go far beyond what I think is

         24   required by Rule 16 and tell you that I think we, the

10:29:49  25   government, have established these two defendants as

10:29:52  1    conspirators in the indictment and at this point the only two

2    clear or potential unindicted coconspirators but people who

3    may have been involved are Tom Metzger, and we know that

4    because Dennis Mahon, even in his interview with National

10:30:11  5    Geographic, which was in our motion that you read where he

6    says "I believe in Tom and WAR and what they agree with," if

7    Thomas Metzger -- and his last name is M-E-T-Z-G-E-R.  If he

8    is the head of WAR and if Dennis Mahon believes in following

9    Thomas Metzger, did they conspire?  At this point, they did,

10:30:36 10    perhaps, but my point is that we're not trying to hide

11    anything.

12         And the only other one is listed in overt act 12

13    where in 2007 the defendants sent the confidential informant

14    to Missouri, and that individual is Robert Joos, J-O-O-S.

10:30:57 15         So if we get closer to trial and we think there are

16    going to be other names that come up as potential

17    coconspirators, we'll let the defense know.  And we can talk

18    about that when we get closer to trial.

19         But there's not an effort to arrive at trial and

10:31:13 20    sandbag the defense and start to name all these individuals

21    and surprising the defense in this case.

22         THE COURT:  So you're saying that as of today the only

23    two unindicted coconspirators the government is aware of are

24    Robert Metzger -- I'm sorry, Tom Metzger and Robert Joos?

10:31:31 25         MS. WILLIAMS:  Well, there could be others who are

10:31:32  1    involved in WAR.  The whole concept of WAR, if I can just

2    finish, is the idea of lone wolves, individual cells acting

3    independently on behalf of WAR.

4        THE COURT:  Well, the question I'm asking, Mr. Boyle,

10:31:44  5    concerns the government's intent as of today as to what you're

6    going to present to the jury.  And I understood you to say a

7    minute ago that you're not hiding the ball and that the only

8    two unindicted coconspirators that you presently know of that

9    you intend to present to the jury, or potentially present to

10:32:01  10    the jury, are Mr. Metzger and Mr. Joos.

11        MR. BOYLE:  Potentially, and that's correct, yes.

12        THE COURT:  There aren't others that you know of and

13    are planning to use at trial that you are leaving out of your

14    discussion now; is that right?

10:32:16  15        MR. BOYLE:  I believe that's correct.  I do.  And if

16    that changes, we will let the defense know.

17        And I'll tell you, I think that's well beyond our

18    duty, but I think there is some fairness that the defense not

19    be surprised.  I just don't want the Court to have the

10:32:31  20    impression we're hiding massive information in the discovery

21    and we're going to surprise the defense.  We've complied with

22    Rule 16, but if there was some concern about this issue of us

23    sandbagging, that's not going to happen.

24        The second point I wanted to make is I guess I also

10:32:48  25    do not agree with this idea that the defendant's speech is

10:32:53    1    protected, although that can be a separate motion.  The

2    defendant's speech is not a crime.  That's not what an overt

3    act is.  It's to show the defendant's intent.  And the law is

4    very clear an overt act could be an innocent act.  It doesn't

10:33:06    5    have to be a crime at all.  The defendant's statement as an

6    overt act can be innocent in nature, yet still prove the

7    agreement or the defendant's intent.

8        Regarding this being a simple case, I'd submit to you

9    this is a relatively straightforward case and it's not just

10:33:25   10    about Don Logan and the bombing in Scottsdale, it's about

11    these two men subscribing to this idea of being lone wolves

12    and acting independently to bomb buildings, the government, on

13    behalf of WAR.  And that is consistent throughout the

14    indictment.

10:33:44   15        And the real question is a four-corners review of

16    what the government has written here, and it doesn't begin and

17    end with Don Logan.  You see from the years they were involved

18    in this conspiracy that they were involved -- at least we've

19    alleged they were involved in the bombing, but they taught the

10:34:01   20    confidential informant how to bomb; there's a videotape to

21    give you more example of they show her how to construct a

22    bomb.  We alleged in the overt acts they sent her mailings how

23    to construct bombs.  The overt acts describe one overall

24    conspiracy, not three separate conspiracies.  Not additional

10:34:21   25    conspiracies to send her mailing materials that she bomb on

10:34:24  1    her own.  There's one overall conspiracy.

2             THE COURT:  Well, let me ask you this question,

3    Mr. Boyle:  Let's assume we go to trial with that theory and

4    you present the evidence of that conspiracy and the jury gets

10:34:36  5    back into the jury room to deliberate and half of them think

6    that you've proven that the defendants conspired to bomb the

7    Scottsdale facility and half of them think that you've proven

8    that the defendants conspired to attack the power grid.  Can

9    they convict?

10:34:57  10             MR. BOYLE:  No.  8.16, the Ninth Circuit instruction,

11   says they have to agree on the overt act.

12             THE COURT:  On the overt act.  But do they have to

13   agree on the conspiracy as well?

14             MR. BOYLE:  Then I misunderstood your question.  They,

10:35:10  15   of course, have to agree that there was intent and an

16   agreement, and then they also have to agree on a specific overt

17   act.

18             THE COURT:  And would it be appropriate to instruct

19   the jury that in order to convict the defendants, they have to

10:35:20  20   agree you've shown beyond a reasonable doubt that there was an

21   overarching conspiracy that went from 2003 to 2009?

22             MR. BOYLE:  I'm not aware of a specific instruction

23   that says that we to have prove a conspiracy from beginning to

24   end.  We just have to show that there was a conspiracy within

10:35:43  25   those dates.  I mean, they could -- they could find, if there

10:35:48  1    was some evidence, that they conspired between 2004 and 2007.

2    And let's say there was some evidence that Daniel Mahon

3    withdrew from that conspiracy.  If he was still involved in

4    2007 and conspiring to bomb, he would still be convicted.

10:36:04  5            THE COURT:  Well, what if -- what if the jury gets

6    back into the jury room and they agree that there was a

7    conspiracy from April of two thousand -- I'm sorry, from

8    January of -- no.  Let me start again.

9            Let's say they agree there was a conspiracy from

10:36:21 10    September of 2003 when Dennis Mahon allegedly called the

11    Scottsdale office, and February of 2004 when the bombing

12    occurred at the Scottsdale office.  If that's all they can

13    agree on, that there was a conspiracy then, can they convict?

14            MR. BOYLE:  Well, now you're getting into a legal

10:36:43 15    question of statute of limitations versus a jury question of

16    sufficiency.  I don't know the answer to that.  I would think,

17    without researching it, that you would, to preserve the statute

18    of limitations question, something in the instruction to say

19    that within five years of the indictment date --

10:37:06 20            THE COURT:  Or we could -- we could a issue -- we

21    could present an interrogatory to the jury saying, "please

22    identify the period of time during which you all agree there

23    was a conspiracy."

24            MR. BOYLE:  As to each particular defendant.  You

10:37:19 25    could.  I understand what you're saying.  I haven't seen that

10:37:25  1    because we frequently don't have the jurors ask legal

2    questions.  But there's a factual component of this.  So I

3    don't think we disagree.  I think at some measure if you wanted

4    to preserve that and have that finding, you would do it within

10:37:41  5    five years of the indictment date if the conspiracy still

6    existed.

7            THE COURT:  Well, the reason I'm asking these

8    questions, as you probably know, Mr. Boyle, is it seems to me

9    that if the government is taking the position, as it clearly

10:37:53 10    is, that there was one conspiracy among these two defendants

11    for this entire period of time, then that's the theory the

12    government's going to have to rely upon at trial.  And we're

13    going to have to craft the jury instructions to make sure that

14    if there's a conviction, it's based on their accepting your

10:38:11 15    theory of the case and not some of them seeing one conspiracy

16    and others seeing a different conspiracy.

17            MR. BOYLE:  I agree with that.

18            I have nothing else.

19            THE COURT:  Okay.

10:38:21 20            MR. BOYLE:  Thank you.

21            THE COURT:  Thanks.

22            All right, any brief reply comments, Ms. Williams?

23            MS. WILLIAMS:  Brief, yes, Your Honor.

24            Your Honor, starting from the end and moving

10:38:36 25    backwards, when the Court is asking Mr. Boyle about these

10:38:39  1    issues with the jury and jury interrogatories, I think you get

2    what we've been trying to explain about the distinct

3    conspiracies and the statute of limitations which, yes indeed

4    is a separate motion and it's coming.  But the fact is that if

10:39:02  5    the jury finds there was, let's say, a conspiracy to bomb

6    Mr. Logan, that bombing ended -- it happened in February of

7    '04.  The end.

8          And it will be our argument in the statute of

9    limitations motion that five years -- that clock starts

10:39:23 10    ticking on that day, and five years later that conspiracy

11    statute had run.  Which is the position --

12          THE COURT:  I understand that, Ms. Williams.  But if

13    the jury thinks that the government has proven that the

14    conspiracy did not end in February, even if the bombing did,

10:39:38 15    and that there was a conspiracy to promote racial discord

16    through violence that went to 2009, in other words if the

17    government proves to the jury's satisfaction this conspiracy

18    really existed, it seems to me that doesn't present a statute

19    of limitations problem and it doesn't present a duplicity

10:39:58 20    problem because that is the conspiracy that the government has

21    made clear it's going to present as its theory of the case.

22          MS. WILLIAMS:  But at the same time, Your Honor, if we

23    give the jury an interrogatory, and at least at this point as

24    we're talking I'm thinking something like that will have to be

10:40:16 25    done, but if we give -- let's say the jury is given an

10:40:19   1    interrogatory that says, "If you believe there was a

2    conspiracy, what was the conspiracy" and half the jurors say

3    there was a conspiracy to bomb Mr. Logan, February '04.  Boom.

4    Half the jurors say there was a conspiracy to bomb a child

10:40:41   5    molester, '05.  Boom.

6              THE COURT:  Well, then you've won, right?  Because you

7    have defeated the government's theory that there was one

8    overarching conspiracy.

9              MS. WILLIAMS:  Yes, but I would suggest to the Court

10:40:55  10    that as Ms. Hull was talking -- I don't think any of us want to

11    waste a lot of time and a lot of unnecessary motion practice

12    and a month or more of trial on issues that I think we can

13    start to sort through some of this through this motion

14    practice.  I would hate to see us, in other words, get to the

10:41:18  15    point where sometime in December a jury starts wrestling with

16    this and that's where we end up.

17              THE COURT:  Well, that's a sufficiency of the evidence

18    argument.  What you just said to me, or what I heard, was the

19    government can't prove the overarching conspiracy, so let's not

10:41:33  20    waste the time getting ready for trial and going to trial

21    because the evidence isn't there.

22              MS. WILLIAMS:  That's not exactly what I meant to say.

23    If you heard it that way, then I inarticulately expressed it.

24    What I'm saying is that these issues exist.  We would like to

10:41:54  25    hash through some of them now with these motions to see if we

10:41:59  1  can get the matters more clearly defined so that we don't reach

2  the end of trial with a verdict that we should have been --

3  that should -- that just blows everything apart and we should

4  have been hopefully able to flesh it out early on.

10:42:19  5      THE COURT:  Well, I don't -- I don't think in this

6  motion practice, Ms. Williams, I'm going to be in a position to

7  predict, nor do I have the power to predict, how the jury will

8  view the evidence.

9      MS. WILLIAMS:  Oh, right.

10:42:31  10      THE COURT:  So the fear that some jurors might accept

11  the '03-'04 conspiracy and others might accept the '05-'06

12  conspiracy is not a basis for me to do anything.  The jury will

13  have to make that decision.  If the government can't prove the

14  overarching conspiracy it's alleging, it won't prove it and the

10:42:51  15  jury won't agree with them.

16      But I guess I'm having -- it sounds to me like what

17  you want to do is start carving the conspiracy up into pieces

18  and filing motions for summary judgment, arguing the

19  government really can't prove that they're related.  And I

10:43:03  20  don't know of anything in federal rules of criminal procedure

21  that allows you to file a motion for summary judgment.

22      MS. WILLIAMS:  If I were in civil practice, God

23  forbid, I would probably be doing that, but I'm not.

24      The other point I wanted to raise, Judge, is that I

10:43:22  25  believe -- I could be wrong, but I believe the Court a couple

10:43:26   1   minutes ago made a comment about when you or Mr. Boyle was

2   talking about a four-corner review of the indictment, and I

3   believe Your Honor made comment about this is -- this is not

4   about her, the informant, bombing alone.  Bombing alone.

10:43:49   5   Maybe Mr. Boyle said it, I don't remember.  But in any event,

6   I just wanted to point out that in fact the sting conspiracy

7   was precisely about that.  The arrest conspiracy, power grid,

8   was precisely about that.  And I just wanted to respond on

9   that note.

10:44:11  10            And that's all I have.

11            THE COURT:  Okay.

12            Ms. Hull.

13            MS. HULL:  Thank you, Judge.  I think that my

14   particular frustration stems from the fact that my client, like

10:44:28  15   I said, was never involved in WAR, there's no evidence of it,

16   and his involvement in the conspiracy is Dennis supposedly used

17   his phone in September of 2003.  And, Judge, that's really

18   pretty much about it.

19            THE COURT:  You just said the government doesn't have

10:44:43  20   enough evidence to prove their theory against Daniel, right?

21            MS. HULL:  Correct.  But it seems to me, Judge, that

22   it is a monumental waste of resources if the government -- and

23   I guess my problem stems from the fact that they didn't charge

24   this conspiracy under 371, they charged it under 844.  Which

10:45:06  25   the way I read 844, you have to name the specific object of

10:45:12  1    that conspiracy.  And they have just said they can't.  Not for

2    January '09 at least, which, if that is what they're standing

3    on, and I've listened to your questions to Mr. Boyle, for

4    example, and to Ms. Williams that if the overall conspiracy the

10:45:33  5    government is saying they're taking to trial is to promote

6    racial discord by the use of violence, we have -- we're done

7    with the statute.  We're done with the statute of limitations.

8    My client is out if that's what we're talking about because

9    there is no object of that conspiracy.  They didn't charge 371.

10:45:54 10         I would submit that, without further research, I

11    don't even know they need these overt acts.  It's not the

12    overt acts we're talking about.  It's not enough for them to

13    say "In January '09, Dennis Mahon got on the phone and said

14    something about some ambiguous power grid and therefore our

10:46:14 15    indictment is saved and we can file in June of '09."

16         844 requires specific -- a specific object of that

17    conspiracy.  Not multiple overt acts that might one of --

18    might be able to go to a jury.

19         THE COURT:  Ms. Hull, you are arguing legal

10:46:33 20    insufficiency of the indictment.  You're not arguing duplicity

21    and you're not arguing bill of particulars.  Right?

22         MS. HULL:  That's not the way I see it, Judge, and

23    that's only because if they're saying, as they just have, and I

24    guess this comes in the form of a question, if the government's

10:46:52 25    position for the record is what I just heard Mr. Boyle say,

10:46:57  1    number one, it's an overarching conspiracy between September of

2    '03 and January of '09 and they do not have any -- they're not

3    going to name any particular object of that conspiracy other

4    than this phrase, promote racial discord on behalf of WAR, then

10:47:18  5    I want to be able to proceed on that avowal to this Court that

6    that is how -- that is what -- how we're supposed to interpret

7    this indictment.  Because that's what I just heard.  And if

8    that is the case, then I guess I don't need any more.

9              THE COURT:  All right.  Thank you.

10:47:39 10              MS. HULL:  Thank you, sir.

11              THE COURT:  Mr. Boyle, did you want to say anything

12    else before we wrap up?

13              MR. BOYLE:  I don't, Your Honor.  Thank you.

14              THE COURT:  Okay.  I'll take these motions under

10:47:48 15    advisement and get you a ruling in the next several days.

16    Thank you.

17              MR. MORRISSEY:  Your Honor?  Judge, may I raise one

18    issue?

19              THE COURT:  Yeah.

10:47:57 20              MR. MORRISSEY:  We had talked about motion deadlines

21    and your latest case management order sets those all forth and

22    I just want to make sure that the government complies on a

23    timely basis.  Prior to a lot of the deadlines set by the Court

24    the defense has now filed motions.  Are our responses due

10:48:17 25    according to the regular ten days or do we have the dates set

10:48:19  1    forth in the case management order?

2              THE COURT:  I think we ought to go with the ten days.

3    If there's a problem, you can talk to the defendants and call

4    me, but I'd rather get them briefed and deal with them rather

10:48:31  5    than put off your responses until the date and have to deal

6    with them all at once.

7              MR. MORRISSEY:  That's fine, Your Honor.  I could see

8    ambiguity and I just wanted clarity.

9              THE COURT:  Okay.  Thanks.

10:48:54  10             (End of transcript.)

11                              *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 16th day of August, 2010.

s/ Patricia Lyons, RPR, CRR
Official Court Reporter