DENNIS K. BURKE
United States Attorney
District of Arizona

MICHAEL T. MORRISSEY
Assistant U.S. Attorney
Arizona State Bar No. 012531
JOHN BOYLE
Assistant U.S. Attorney
Arizona State Bar No. 015640
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mike.morrissey@usdoj.gov
john.boyle@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America<br><br>　　　　Plaintiff,<br>　v.<br>Daniel Mahon,<br>　　　　Defendant. | CR-09-00712-002-PHX-DGC<br><br>**RESPONSE TO MOTION FOR RELEASE** |

The government hereby responds to Defendant Daniel Mahon's Motion for Release and asks that it be denied. This Court previously held a hearing on this matter and found the Defendant to be both a danger to the community and a flight risk. The Defendant presents the same arguments regarding the weight of the evidence and the history of the Defendant, both of which the Court considered and rejected.

This response is supported by the attached Memorandum of Points and Authorities.

Respectfully submitted this 28th day of April, 2011.

　　　　　　　　　　　　　　　　　　DENNIS K. BURKE
　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　District of Arizona

　　　　　　　　　　　　　　　　　　s/ *Michael T. Morrissey*
　　　　　　　　　　　　　　　　　　MICHAEL T. MORRISSEY
　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney

　　　　　　　　　　　　　　　　　　s/ *John Boyle*
　　　　　　　　　　　　　　　　　　JOHN BOYLE
　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney

MEMORANDUM OF POINTS AND AUTHORITIES

**I. The government objects to a second evidentiary hearing on this matter.**

This Court should deny defendant's request for a second evidentiary hearing. A court is not required to hold an evidentiary hearing when conducting a de novo review of a Magistrate Judge's order. United States v. Raddatz, 447 U.S. 667, 676 (1980). Certainly, this Court does not need a second hearing to reconsider its own order. Nor is the Court required to grant further argument. United States v. Koening, 912 F.2d 1190, 1191-93 (9th Cir. 1990). There are no new additional issues of fact for this Court to consider. The defendant has not challenged a single factual ruling of this Court's detention order of August 11, 2009. Instead, the defendant reasserts the same arguments presented in 2009. The only changed circumstance before this Court is the length of the delay prior to trial. This Court does not need an evidentiary hearing and argument to consider the current trial date in relation to the defendant's custody status.

**II. This Court previously considered and rejected Defendant's arguments.**

The defendant presents the same arguments that were considered and rejected by this Court in August 2009.[1] The defendant asserts that Daniel Mahon has no criminal history and supported his parents on their Illinois farm. This Court addressed that issue in the "History and Characteristics of Defendant" section of its order regarding detention. The Court noted the defendant's lack of criminal history, but also detailed numerous examples of potential for danger. The Court noted that Daniel Mahon described himself as a "domestic terrorist" and that he participated in a 30-minute, armed standoff prior to being arrested in July 2009. (Docket #44, Page 6, Lines 7-20.) The Court found that the Defendant did not merely engage in free speech.

---

[1] The defendant does not address the rebuttable presumption of detention that exists against the Defendant. "In this case, the Act establishes a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of the community. This presumption arises from 18 U.S.C. § 3142(e)(3)(C) and the Indictment's charge that Defendant conspired to violate 18 U.S.C. § 844(i), an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum prison term of 10 years or more is prescribed." (Docket #44, Pages 2-3, Lines 27-28, 1-4.)

2

> The information described above suggests that Daniel and Dennis believe in the use of violence to further their political and social views. This is not a case of mere personal beliefs or First Amendment expression. As noted above, Daniel reported to a confidential informant that Daniel had engaged in drive-by shootings and had destroyed automobiles and buildings with explosive devices. The Indictment alleges that two employees of the City of Scottsdale were injured by a bomb delivered pursuant to Defendant's conspiracy. Defendants considered shooting the law enforcement officers who appeared to arrest them. At least one of their communications suggested that assaults should be made on the Arizona and Texas power grids if Dennis was arrested. The evidence suggests that Defendants intended to act violently, not merely express their views.

(Docket #44, Page 7, Lines 12-21.)

The Court rejected the Defendant's same argument regarding the weight of the evidence in this case.

> The Ninth Circuit has stated that the weight of the evidence against a defendant is the least important of the factors listed in § 3142(g), but it nonetheless is a factor to be considered. *Hir*, 517 F.3d at 1090. The evidence in this case appears to be substantial.
> The Government has proffered tape recordings and affidavits from confidential informants capturing Daniel and his brother acknowledging their bomb making activities and communicating with others about the conspiracy discussed above. Daniel reported to a confidential informant that he and his brother do more than just talk about violent activities. He described his participation in drive-by shootings and blowing up cars and buildings. He said that on one occasion he blew a desk through a second floor roof. Daniel reported to the confidential informant that he did these things not out of anger, but out of duty. Such violence is like a military operation, he explained, "[y]ou planned for it, equip for it." Dkt. #13-3 at 7.

(Docket #44, Pages 4-5, Lines 27-28,1-10.)

The government previously submitted, as referenced by the Court, several examples of the defendant's potential for violence. On April 2, 2008 (Call 1214), Dennis and Daniel Mahon discussed their anger toward Hispanics living in their community.

> Daniel: And uh, anyway, he uh, said that uh, there's a small company that's laying off all the white guys here and hiring Mexicans.
> Dennis: Oh really.
> Daniel: I said Don, you need to go up there, get some good ol' boy together, get some, get some alcohol, some, some, some uh vodka, throw it throw it through a window and light the place up and burn it right to the ground.

On December 11, 2007 (Call #460, 8:29:15 a.m.), Daniel Mahon discussed Hispanic men at a local laundry and the need for violence.

3

> Daniel: That's the problem with these guys. When they get, you know, a job placed...they start getting real obnoxious, hoping the white guys will quit so they can bring their relatives in.
> Dennis: That's it right there, yeah
> Daniel: **That's why we've got to start getting violent.** You know, these God-damned whites that think this is great are in for a fucking...big fucking surprise, man. (Emphasis added.)
> Dennis: Yeah.

This Court previously concluded that, "[a]lthough Daniel has no criminal history and appears at times to have led a productive life, including honorable service in the Coast Guard and Navy, the extensive evidence and destructive materials found in Defendants' home, as well as their repeatedly expressed intent to use violence to further their political and social views, strongly suggests that Defendant is a danger to the community." (Docket #44, Pages 7-8, Lines 23-28, 1.) The defendant has a right to speak freely, but this Court has correctly determined that his words advocating violence toward minorities is evidence of his danger. There is no change in the evidence warranting the Defendant's release.

**III.  There are no changed circumstances that warrant the defendant's release.**

The defendant's claims that investigatory failures and the current trial date warrant his release are incorrect. Neither of these warrant the defendant's release, and would not change the fact that the defendant is a danger to the community and a flight risk.

The defendant's allegation regarding investigatory failures is inaccurate. The defendant asserts that "investigative databases" should have been referenced to compare the DNA results in this case. The defense has been informed on several occasions, to include March 23, 2011, that the partial DNA profile obtained by Orchid Cellmark laboratory cannot be entered into CODIS (Combined DNA Index System). Counsel for the government have contacted the lab personnel for the FBI, ATF, the Arizona Department of Public Safety, the Phoenix Police Department, and Orchid Cellmark. All of the personnel have confirmed that there is no laboratory in Arizona that can enter the partial DNA results into CODIS. Lab representatives

for the FBI and ATF have confirmed that they also cannot enter the DNA results into CODIS.[2/] On April 1, 2011, counsel for the government informed the defense in this case that counsel would attempt to determine if an "exception" could be made by the FBI in this case. Thusfar, no CODIS administrator has permitted an exception in this case. The claim that the government has failed to pursue an "obvious" investigatory tool does not accurately portray the information that was sent to defense counsel prior to the filing of Defendant's Motion.

The defendants requested a trial date of January 2012. The government objected to a continuance of this length. The defense argued to this Court that a one-year continuance was necessary to adequately prepare for trial. Defendant claims that late disclosure required a year-long delay. The continuance length, however, is primarily a result of the defendants' request. The defendants have spent thousands of hours reviewing every conceivable facet of this case. The defendants have made numerous exceptional requests of the prosecution. They have requested the digitizing of every analog or videotape recording; the complete file of every polygraph conducted in this case, including original printouts; the "raw data" files of calling records; eight individual sessions to review physical evidence; and, they have made hundreds of detailed, specific discovery requests. Defense counsel requested a January, 2012 trial date because they believed it was in their clients' best interests. Their clients agreed, and agreed to waive time under the Speedy Trial Act. The defendants' request is the primary reason for the delay in this case.

//

//

---

[2/] The CODIS system has published standards that control the entry of DNA profiles into the system. The standards concern numerous factors, to include the quality of a profile that can be entered (e.g. a minimum number of "core loci" that must be identified to permit CODIS entry), the laboratories that can enter a profile (public v. private), and the quality assurance criteria that must be met.

5

**IV. Conclusion.**

The government requests the defendant continue to be detained as flight risk and a danger to the community pending trial.

Respectfully submitted this 28th day of April, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

s/ *Michael T. Morrissey*
MICHAEL T. MORRISSEY
Assistant U.S. Attorney

s/ *John Boyle*
JOHN BOYLE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Barbara L. Hull, Attorney for defendant

6